## RAILROAD COMPANY *v.* HECHT.

1. A statute which prescribes a mode of serving process upon railroad companies different from that provided for in a charter previously granted to a particular company, does not impair the obligation of the contract between such company and the State.
2. The power of a State to regulate the forms of administering justice is an incident of sovereignty, and its surrender is never to be presumed.
8. As against the government, the word "shall," when used in statutes, is to be construed as "may," unless a contrary intention is manifest.

ERROR to the Supreme Court of the State of Arkansas.

The Cairo and Fulton Railroad Company having been sued in the Circuit Court of Clay County, Arkansas, service was had

on the tenth day of September, 1873, by leaving a copy of the summons with a clerk of the company.

Judgment was rendered by default. A motion was subsequently made to set the default aside, on the ground that there had been neither legal service upon nor appearance by the company. This motion having been overruled, the company appealed to the Supreme Court of the State, where the judgment below was affirmed. The company then brought the case here.

The company was incorporated by an act of the legislature of Arkansas, approved Jan. 12, 1853.

The thirteenth section of that act provides as follows: ·

"This act shall be deemed a public act, and shall be favorably construed for all the purposes therein expressed and declared in all courts and places whatever, and shall be in force from and after its passage: *Provided,* that all the rights, privileges, immunities, and franchises contained in the charter granted at this session of the legislature of this State to the Mississippi Valley Railroad Company, not restricting or inconsistent with this act, are hereby extended to and shall form a part of this incorporation as fully as if the same were inserted herein."

The charter of the Mississippi Valley Railroad Company was granted by an act approved Jan. 12, 1853, the twenty-fourth section of which provides that "process on said company shall be served on the president by leaving a copy to his address, at the principal office of the corporation, in the hands of any of its officers."

An act passed in 1868 provides that "where the defendant is a corporation, created by the laws of this State, the service of the summons may be upon the president, mayor, chairman of the board of trustees, or other chief officer; or, if its chief officer is not found in the county, upon its cashier, treasurer, secretary, clerk, or managing agent."

It will be seen that service in this case was made pursuant to the latter act, and not to the provisions of the charter.

The company here assigns for error that its charter constitutes a contract between it and the State, and that the subsequent act under which the process was served impairs the obligation of the contract, and is therefore in violation of sect. 10, art. 1, of the Constitution of the United States.

*Mr. U. M. Rose* for the plaintiff in error cited *Oliver* v. *Memphis Railroad Co.,* 30 Ark. 129; *St. Louis Railroad Co.* v. *Loftin,* id. 693; *Bronson* v. *Kinzie,* 1 How. 311; *Commonwealth* v. *United States Bank,* 2 Ashm. (Pa.) 349; *Aurora Turnpike Co.* v. *Holthouse,* 7 Ind. 59; *Powell* v. *Sammons,* 31 Ala. N. s. 552; *Cairo & Fulton Railroad Co.* v. *Turner,* 31 Ark. 494.

No counsel appeared for the defendants in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The single question presented by this record is whether a statute which prescribes a mode of service of judicial process upon the Cairo and Fulton Railroad Company, different from that provided for in its charter, is void because it impairs the obligation of a contract. The regulation of the forms of administering justice by the courts is an incident of sovereignty. The surrender of this power is never to be presumed. Unless, therefore, it clearly appears to have been the intention of the legislature to limit its power of bringing this corporation before its judicial tribunals to the particular mode mentioned in the charter, the subsequent legislation upon that subject was not invalid. The provision of the charter relied upon is in these words: " Process on said company shall be served on the president by leaving a copy to his address, at the principal office of the corporation, in the hands of any of its officers. The said corporation shall have power to establish a principal office at such place as they may see fit, and the same to change at pleasure." As against the government, the word " shall," when used in statutes, is to be construed as " may," unless a contrary intention is manifest. Here no such intention appears. The largest latitude is given the company in respect to the location of its principal office; and it can hardly be supposed that the legislature meant to deprive itself of the power of providing another mode of service, if that specified was found to be inconvenient or unwise. The provision is one which evidently belongs to remedies against the corporation, and not to the grant of rights. As to remedies, it has always been held that the legislative power of change may be exercised when it does not affect injuriously rights which have been secured. *Sturgess* v. *Crowninshield,* 4 Wheat. 122.          *Judgment affirmed.*