T.C. Summary Opinion 2019-25

UNITED STATES TAX COURT

STEVEN E. MENDELSON, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 129-17S.                     Filed September 4, 2019.

Steven E. Mendelson, pro se.

<u>Caitlin A. Homewood</u>, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code (Code) in effect for the year in issue, and all Rule references are to the Tax

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency (notice) dated September 26, 2016, respondent determined a deficiency in and additions to petitioner's Federal income tax for 2013 as follows:

| | Additions to tax | | |
| Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
| --- | --- | --- | --- |
| $14,416 | $2,890 | $1,798 | $228 |

After concessions,[2] the issues for decision are whether petitioner is (1) entitled to a self-employed health insurance deduction, (2) entitled to itemized deductions on Schedule A, Itemized Deductions, (3) entitled to deduct business expenses on Schedule C, Profit or Loss From Business, and (4) liable for additions to tax under sections 6651(a)(1) and (2) and 6654(a).

---

[1](...continued)
Court Rules of Practice and Procedure. We round some monetary amounts to the nearest dollar.

[2]Respondent determined that petitioner received $296 of taxable royalty income, $52,380 of taxable nonemployee compensation income, $4,201 of taxable dividend income, $645 of taxable interest income, and $366 of taxable capital gain income which he failed to report on his 2013 Federal income tax return. At trial petitioner conceded receipt of all income items as determined.

Background

Some of the facts have been stipulated and are so found. The record consists of the stipulation of facts with attached exhibits, exhibits introduced at trial, and petitioner's testimony. Petitioner resided in California when the petition was timely filed. The facts in the record are somewhat incomplete because of the limited documentary evidence by petitioner provided.

Petitioner is an attorney licensed in the State of California. He had a solo law practice for many years. During 2005 through 2009 petitioner sustained significant business losses, and thereafter he felt psychologically unable to maintain a full-time practice. Petitioner closed his law office in 2009, but he continued working on cases throughout 2013 and into 2014.

After the law office closed, petitioner continued his practice of law and worked out of a designated office space in his home. He converted an unused 168-square-foot bedroom in his 2,400-square-foot home into an office space. The room was connected to a large closet consisting of approximately 20 additional square feet. In total, the home office took up approximately 7.83% of the total living space within petitioner's home. The home office housed two desks, six two-drawer file cabinets, and a bookshelf that held books and supplies.

Petitioner continued to maintain five business telephone lines in addition to his cell phone. He continued to pay independent contractors to provide paralegal and bookkeeping services for his practice. The paralegal worked out of her own home, and petitioner reimbursed her business expenses. Petitioner also contracted with a private investigator on some cases, as needed.

Petitioner kept a general ledger and a "profit and loss statement" to track his business expenses. Either petitioner's paralegal or his bookkeeper would tally the ledger and handle recordkeeping for the law practice. Both the general ledger and profit and loss statement were created contemporaneously, recording receipts and expenses.

Petitioner failed to file a 2013 Federal income tax return, failed to pay Federal income tax, and failed to pay estimated tax. Respondent, using third-party payor reports, determined that petitioner received and failed to report various income items. Respondent prepared a substitute for return (SFR), determining a deficiency of $14,416 and further determined additions to tax for failure to file, failure to pay, and failure to pay estimated tax. Petitioner had previously failed to file a 2012 Federal income tax return.

On September 26, 2016, respondent issued petitioner the notice reflecting the aforementioned adjustments. After filing a petition with this Court, petitioner

submitted to respondent a 2013 Form 1040, U.S. Individual Income Tax Return, that a bookkeeper had prepared for him.[3] Petitioner attached Schedules A, B, C, and SE to the return. On Schedule C petitioner reported gross receipts of $52,676.

Petitioner contends he is entitled to deductions in addition to those that he reported on the return submitted to the IRS after he filed his petition. Petitioner's claimed deductions include a self-employed health insurance deduction of $13,687 and Schedule A itemized deductions totaling $12,421. Petitioner also claimed Schedule C expense deductions as follows:

| Expense | Total |
|---|---|
| Contract labor | $11,395 |
| Other interest (mortgage) | 3,479 |
| Home office "fee" | 600 |
| Office | 472 |
| Legal and professional services | 225 |
| Taxes and licenses | 5,222 |
| Passenger automobile (mileage) | 2,260 |
| Travel, meals, and entertainment | 1,500 |
| Utilities | 6,609 |
| Other (Wells Fargo fees) | 1,695 |
| Bad debt | 3,000 |
| Personal cash advances | 68,000 |
| Total | 104,457 |

---

[3]Respondent did not process the 2013 Form 1040 as submitted; however, it was made a part of the record.

At trial the parties stipulated that a 2013 Form 1099-MISC, Miscellaneous Income, existed listing petitioner's paralegal as the payee of $10,430. The parties further stipulated that the following amounts were listed in the general ledger although respondent did not stipulate that these amounts were either incurred or paid: (1) $3,319 to Kaiser Foundation Health Plan, Inc., related to health insurance; (2) a total of $6,499 for communications services paid to AT&T ($4,624), MCI ($488), and Verizon ($1,387); (3) $195 to Wells Fargo Bank, N.A. (Wells Fargo), for returned check fees of $70 and a bank fee for tax fee of $125; (4) $447 to LexisNexis for legal research; and (5) $225 to the Alameda-Contra Costa Trial Lawyers Association.

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner has not asserted or otherwise shown that section 7491(a) applies. See sec. 7491(a)(2)(A) and (B). Therefore, petitioner bears the burden of proof.

I.      <u>Deductions</u>

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving he or she is entitled to any deduction claimed.  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).  Thus, the taxpayer is required to maintain records sufficient to substantiate expenses underlying deductions claimed on his or her return.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.; <u>see</u> <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  If the taxpayer is able to establish that he paid or incurred a deductible expense but is unable to substantiate the precise amount, the Court generally may approximate the deductible amount, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate.  <u>See</u> <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930); <u>see also</u> <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985).  The failure to keep and produce appropriate records counts heavily against a taxpayer's attempted proof.  <u>Rogers v. Commissioner</u>, T.C. Memo. 2014-141, at *17.

A.   Petitioner's Self-Employed Health Insurance Deduction

Section 162(l) permits self-employed individuals to deduct amounts paid for health insurance.  As discussed above, petitioner was a self-employed attorney during the year in issue.

Petitioner submitted the general ledger for his law practice into evidence, and the Court has found it to be a contemporaneous business record created by petitioner's contract employees.  At trial the parties stipulated that the general ledger recorded total payments to Kaiser Foundation Health Plan, Inc., of $3,319, covering the first three months of the year.  There are no recorded payments for the remainder of 2013.

Petitioner testified that the general ledger is incomplete and that he paid over $1,000 in health insurance premiums each month in 2013.  Petitioner testified that his claimed self-employed health insurance deduction of $13,687 is based on payments to Kaiser Foundation Health Plan, Inc., of  $1,015 on February 6, 2013, and $1,152 on March 5, 2013, each recorded in petitioner's general ledger. Petitioner multiplied the March payment by 11 in order to calculate monthly payments for the remainder of the year.

Although we find petitioner's testimony generally credible, he has not provided sufficient substantiation for the Court to estimate self-employed health

insurance premiums paid from April through December 2013. In the light of the evidence in the record, we hold that petitioner is entitled to deduct $3,319 for this item.

B.    Petitioner's Itemized Deductions

Petitioner claims that he is entitled to $12,421 of itemized deductions. As a general matter a taxpayer must file a return in order to elect to itemize deductions. See sec. 63(e)(2); Murray v. Commissioner, T.C. Memo. 2012-213; Jahn v. Commissioner, T.C. Memo. 2008-141, aff'd, 392 F. App'x 949 (3d Cir. 2010). Petitioner did not file a return for tax year 2013. While there is some evidence in the record that might substantiate a limited itemized deduction, it is not at all clear whether such an amount would exceed the standard deduction of $6,100 that respondent allowed. Accordingly, we conclude petitioner is not eligible to deduct the itemized deductions claimed on the Schedule A.

C.    Petitioner's Business Expense Deductions

Section 162(a) generally allows deductions for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. In general no deduction is permitted for personal, living, or family expenses. Sec. 262(a). The taxpayer bears the burden of proving that expenses

were of a business nature rather than personal and that they were ordinary and necessary. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. at 115.

For certain kinds of expenses otherwise deductible under section 162(a), a taxpayer must satisfy substantiation requirements set forth in section 274(d) before those expenses will be allowed as deductions. Section 274(d) substantiation requirements supersede the <u>Cohan</u> test. <u>See</u> <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827-828 (1986), <u>aff'd</u>, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d) disallows deductions for travel expenses, gifts, meals, and entertainment, as well as for listed property as defined by section 280F(d)(4), unless the taxpayer substantiates by adequate records or corroborates by sufficient evidence the taxpayer's own statements as to: (1) the amount of the expense, (2) the time and place of the travel or entertainment, or the date and description of the gift, (3) the business purpose of the expense, and (4) the business relationship of the taxpayer to the persons entertained.

Petitioner claimed a number of deductions related to his legal practice.[4] We will take each underlying expense in turn. Respondent concedes that petitioner

---

[4]The deductions were claimed on the return submitted to the IRS after the petition was filed and were made a part of the record.

conducted a solo law practice during taxable year 2013. In operating his business, petitioner necessarily incurred certain labor costs and office expenses. In the absence of adequate documentation we estimate expenses not subject to section 274(d), bearing heavily against petitioner because of his failure to maintain adequate records. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957) (noting that trial courts have "considerable latitude * * * in making estimates of amounts probably spent in the light of accepted practice amongst law-abiding businessmen of moral standing considering the nature and kind of records which might reasonably be kept for such expenditures"); Cohan v. Commissioner, 39 F.2d at 544.

### 1. Contract Labor

Petitioner testified that he paid three contract laborers in relation to his legal practice during the tax year in issue. In total, petitioner reported $11,395 for contract labor on the Schedule C.

At trial the parties stipulated the existence of a Form 1099-MISC issued to petitioner's paralegal reporting $10,430. Petitioner's staff recorded additional contract payments in petitioner's general ledger. The general ledger shows a payment of $550 to petitioner's bookkeeper on February 26, 2013. At trial, petitioner testified that this amount was paid for the preparation of Forms 1099-

MISC for tax years 2010 through 2012. The general ledger also lists two payments to a contract private investigator totaling $315. In total, petitioner provided some substantiation for $11,295 of his reported contract labor expenses.

On the basis of petitioner's credible testimony and contemporaneous business records, we find petitioner has sufficiently substantiated contract labor expenses paid to his paralegal, bookkeeper, and private investigator. Accordingly, we hold that petitioner is entitled to deduct contract labor expenses of $11,295 for tax year 2013.

2.      Mortgage Expenses and Business Use of Home

Petitioner claimed three business expense deductions related to his home office for the 2013 tax year: (1) a home mortgage interest deduction, (2) a "home office fee", and (3) a deduction for office expenses.

Petitioner claims that he is entitled to deduct on Schedule C $3,479 of "Other interest" for home mortgage interest payments that he made in 2013.[5]

---

[5]Petitioner initially reported $3,860 of home mortgage interest payment expenses on the Schedule C submitted to the IRS after he filed the petition. He corrected this amount at trial. The discrepancy was due to two Forms 1098, Mortgage Interest Statement, that petitioner received for tax year 2013 issued by Wells Fargo, the lender. The original Form 1098 showed $3,860 of home mortgage interest paid. On February 18, 2014, Wells Fargo sent a replacement Form 1098 showing $3,479. That statement "corrects the account transaction which was reported incorrectly" and directs petitioner to "retain this statement

(continued...)

Section 280A(c)(1)(A) allows a taxpayer to deduct expenses for the business use of his or her residence. The expenses allocable to a home office may be deducted only if a portion of the residence is regularly and exclusively used as the principal place of business for any of the taxpayer's trades or businesses. Sec. 280A(c)(1)(A). Petitioner was engaged in practice as a lawyer in 2013 and operated his business exclusively out of his home. Petitioner testified credibly regarding his use of a designated home office space that took up approximately 7.83% of the total living space in his 2,400-square-foot home. Accordingly, the Court concludes that petitioner has met the requirements of section 280A(c)(1) and that he is entitled to a deduction for mortgage interest in proportion to the business use of his home for 2013 (7.83% × $3,479 = $272).

Petitioner additionally contends that he is entitled to a business expense deduction of $600 ($50 per month) as a "home office fee" in relation to his Schedule C business. While there is no provision in the Code for a "home office fee", petitioner did submit two Alameda County Secured Property Tax Statements into evidence. The statements detail two property tax installments of $3,606 and $3,700 paid in tax year 2013. The Court concludes that petitioner has shown

---

[5](...continued)
along with the original for * * * [his] tax records."

entitlement to a deduction for property taxes paid in proportion to the business use of his home for 2013 (7.83% × ($3,606 + $3,700) = $572).

Finally, petitioner claimed a deduction for office expenses of $472 on Schedule C. Respondent contends that no amount should be allowed. Petitioner has provided no substantiation for the office expenses. As a result, petitioner has not proven that he incurred them. See sec. 162. Accordingly, we hold that petitioner is not entitled to deduct office expenses for the 2013 tax year.

### 3. Legal and Professional Services

On Schedule C petitioner claimed a deduction for legal and professional services of $225. Respondent contends that no amount should be allowed.

Petitioner has not provided any substantiation for the reported expenses. As a result, petitioner has not proven that he incurred them. See sec. 162. Accordingly, we hold that petitioner is not entitled to deduct legal and professional services expenses for the 2013 tax year.

### 4. Taxes and Licenses

Petitioner claims a business expense deduction of $5,222 for taxes and licenses. Most of that amount relates to $4,550 in payments that petitioner made to the State of California Employment Development Department (EDD) in 2013, as listed on the general ledger. The EDD provides employment service programs

and collects payroll taxes in California. The parties stipulated at trial that the general ledger records reflect additional licensing payments of $447 to LexisNexis for legal research and $225 to the Alameda-Contra Costa Trial Lawyers Association. As we have accepted petitioner's general ledger as a contemporaneous business record, petitioner has substantiated these expenses. See sec. 162. Accordingly, we hold that petitioner is entitled to deduct $5,222 for taxes and license expenses for the 2013 tax year.

> 5. Passenger Automobile Expenses (Mileage)

At trial petitioner claimed a passenger automobile expense deduction related to an estimated 4,000 miles of business travel in his personal car in 2013. When calculated at the standard business mileage rate of 56.5 cents per mile for 2013, petitioner's passenger automobile expenses total $2,260. See Notice 2012-72, sec. 2, 2012-50 I.R.B. 673, 673. Respondent contends that petitioner is not entitled to any expense deduction for the alleged mileage driven.

Petitioner's passenger automobile is listed property under section 280F(d)(4)(A)(i), and thus related expenses are subject to the substantiation requirements of section 274(d). For expenses relating to passenger automobiles, a taxpayer must substantiate with adequate records or sufficient evidence corroborating his own statement: (1) the amount of each use, i.e., mileage, (2) the

mileage for each business use of the passenger automobile and the total mileage for all purposes during the taxable period, (3) the date of the business use, and (4) the business purpose of the use. See sec. 1.274-5(j)(2), Income Tax Regs.; sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the expenditure and documentary evidence (e.g., receipts or paid bills) of certain expenditures. Sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Substantiation by other sufficient evidence requires the production of corroborative evidence in support of the taxpayer's statement specifically detailing the required elements. Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

Although petitioner supplied some documentation of his business activities on a calendar, he did not keep an account book, a mileage log, receipts, or other substantiating evidence reflecting his mileage and business purpose. Petitioner's calendar does not list the location of any business events nor provide any evidence that the events actually occurred. The calendar proves only that certain business activities were scheduled to occur. On the basis of the record, we conclude that

petitioner has failed to adequately substantiate the use of his vehicle for business travel under section 274(d). Therefore, petitioner is not entitled to deductions for use of his vehicle in 2013.

### 6. Travel, Meals, and Entertainment

At trial petitioner estimated he was entitled to $1,500 in business deductions for travel, meals, and entertainment expenses incurred while entertaining clients and prospective clients in 2013. Travel, meals, and entertainment are also subject to the substantiation requirements of section 274(d). Petitioner did not proffer any substantiation for the claimed expense deductions at trial beyond entries on the aforementioned calendar. This evidence does not meet the substantiation requirements of section 274(d). Therefore, petitioner is not entitled to deductions for travel, meals, and entertainment for 2013.

### 7. Utilities (Telephone, Cable, and Internet)

Petitioner claims business expense deductions of $6,609 for utilities on Schedule C. At trial he testified that the reported expenses were primarily related to the five telephone lines he had dedicated exclusively for business use. The parties stipulated that the general ledger records a total of $6,499 in payments to AT&T, MCI, and Verizon for communications services. During his testimony petitioner also contended that he was entitled to deduct one-third of his Comcast

bill as a business expense because it included a secondary phone line used for faxes. Petitioner did not submit any evidence to substantiate either the amount of the Comcast bill or the alleged business use.

Petitioner has substantiated the reported utilities expenses to the extent that they are recorded in the general ledger. See sec. 162. Accordingly, we hold that petitioner is entitled to deduct $6,499 for utilities expenses for the 2013 tax year.

### 8. Other (Wells Fargo Fees)

Petitioner claims a business expense deduction of $1,695 for Wells Fargo fees. The parties stipulated at trial that the general ledger recorded $70 paid to Wells Fargo for returned check fees and $125 to Wells Fargo for a "bank fee for tax fee." During his testimony petitioner claimed an additional expense deduction of $1,500 ($125 per month) in safe deposit box fees paid to Wells Fargo for 2013. He did not, however, provide substantiating evidence for this expense.

Petitioner has substantiated the reported Wells Fargo fee expenses to the extent that they are recorded in the general ledger. See id. Accordingly, we hold that petitioner is entitled to deduct a total of $195 for Wells Fargo fees for the 2013 tax year.

9.    Bad Debt

Petitioner testified regarding personal loans to a former client and claimed a $3,000 bad debt deduction for 2013.  His statements are corroborated by a November 30, 2017, letter to the Court from the debtor, contained in the record.  In that letter, the debtor affirms that petitioner lent him a total of $72,500 following the financial crisis in order to support the debtor's struggling businesses.  Since the time of the loans, the debtor and one of his companies have filed for bankruptcy and a second company was liquidated.  The debtor has not been able to repay any amount of the loans.

Section 166(a)(1) allows a deduction for any debt that becomes wholly worthless within the taxable year.  To deduct a bad debt, the taxpayer must establish:  (1) the existence of a valid debtor-creditor relationship, (2) that the debt was created or acquired in connection with a trade or business, (3) the amount of the debt, (4) the worthlessness of the debt, and (5) the year in which the debt became worthless.  Davis v. Commissioner, 88 T.C. 122, 142 (1987), aff'd, 866 F.2d 852 (6th Cir. 1989).  Respondent contends that petitioner has failed to establish any of these elements in this case.

Only a bona fide debt qualifies for purposes of section 166.  "A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid

and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs.[6] Generally, a debtor-creditor relationship exists if the debtor genuinely intends to repay the loan and the creditor genuinely intends to enforce repayment. Beaver v. Commissioner, 55 T.C. 85, 91 (1970); Fisher v. Commissioner, 54 T.C. 905, 909-910 (1970).

A bad debt is deductible only for the year in which it becomes worthless. Denver & Rio Grande W. R.R. Co. v. Commissioner, 32 T.C. 43, 56 (1959), aff'd, 279 F.2d 368 (10th Cir. 1960); see also Hatcher v. Commissioner, T.C. Memo. 2016-188, at *17-*18, aff'd, 726 F. App'x 207 (5th Cir. 2018). Worthlessness of the debt is determined by an objective standard and is usually shown by identifiable events that form the basis of reasonable grounds for abandoning any hope of recovery. Am. Offshore, Inc. v. Commissioner, 97 T.C. 579, 593 (1991); Dustin v. Commissioner, 53 T.C. 491, 501 (1969), aff'd, 467 F.2d 47 (9th Cir. 1972); Dallmeyer v. Commissioner, 14 T.C. 1282, 1291-1292 (1950). The

---

[6]Factors indicative of a bona fide debt include whether: (1) the purported debt is evidenced by a note or other instrument; (2) any security was requested; (3) interest was charged; (4) the parties established a fixed schedule for repayment; (5) there was a demand for repayment; (6) any repayments were actually made; and (7) the parties' records and conduct reflected the transaction as a loan. See, e.g., Welch v. Commissioner, 204 F.3d 1228, 1230 (9th Cir. 2000), aff'g T.C. Memo. 1998-121; see also Kaider v. Commissioner, T.C. Memo. 2011-174.

subjective belief of the taxpayer that the debt is uncollectible is insufficient to support a deduction for worthlessness. Fox v. Commissioner, 50 T.C. 813, 822-823 (1968), aff'd per order, 70-1 U.S. Tax Cas. (CCH) para. 9373 (9th Cir. 1970); Sarvak v. Commissioner, T.C. Memo. 2018-68, at *9. It is incumbent upon the taxpayer to show sufficient objective facts from which the Court can conclude that the debt is worthless. Fox v. Commissioner, 50 T.C. at 822-823.

While we find both petitioner's testimony and the letter from the debtor credible, petitioner has not presented any evidence of executed notes, loan documents, collateral, or security that would establish the amounts of the loans and when they were created. Nor has petitioner claimed that he agreed to a schedule for repaying the loans or that he ever demanded repayment. Therefore, the Court has no basis on which to determine whether bona fide debt was created or that the parties intended to enter into a genuine debtor-creditor relationship.

Additionally, petitioner has failed to present any objective evidence that the alleged debts became worthless in 2013. Petitioner testified only as to his subjective belief, and he further testified that if the debtor were able to pay he would accept payment for the debt owed in the future. The letter similarly does not establish that the debts became worthless in 2013. As of the date of the letter, the debtor stated that he is "beginning to have some success" in business and that

"it weighs heavily on my heart that I haven't been able to repay [the] loans". This letter appears to indicate a present intent to repay the loans in the future.

For these reasons, we conclude that petitioner is not entitled to deduct any amount related to the "bad debt" for tax year 2013.

### 10. Personal Cash Advances

Petitioner offered vague testimony regarding $68,000 of his personal funds that he advanced to his law practice in tax year 2013. A number of entries in the general ledger labeled "SEM" (petitioner's initials) corroborate the advancement of funds throughout the year in issue. Petitioner, however, has not provided a valid legal theory as to why the advances should be treated as deductible business expenses. Petitioner has failed to establish that any advances made to the business in 2013 represent debt or a scenario that would provide a basis for deductibility. For these reasons, petitioner is not entitled to a deduction for his personal funds advanced to his law practice in 2013.

## II. Additions to Tax

Initially, the Commissioner has the burden of production with respect to any penalty, addition to tax, or additional amount. Sec. 7491(c). The Commissioner satisfies this burden of production by coming forward with sufficient evidence that

indicates that it is appropriate to impose the penalty.[7] See Higbee v.

Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner satisfies this

burden of production, the taxpayer must persuade the Court that the

Commissioner's determination is in error by supplying sufficient evidence of an

applicable exception.  Id.

A.    Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a return on

the date prescribed (determined with regard to any extension of time for filing)

unless the taxpayer can establish that the failure is due to reasonable cause and not

due to willful neglect.[8]  The section 6651(a)(1) addition to tax is equal to 5% of

the amount of tax on the return if the failure is not for more than one month, with

an additional 5% to be added for each month or partial month during which the

failure to file continues, not to exceed 25% in the aggregate.

_____

[7]Sec. 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment" receives supervisory approval. This provision does not apply to "any addition to tax under section 6651, 6654, or 6655".  Sec. 6751(b)(2)(A).  Accordingly, the requirement in sec. 6751(b)(1) does not apply to the additions to tax in issue.

[8]If the Secretary makes a return for the taxpayer under sec. 6020(b), it is disregarded for purposes of determining the amount of the addition to tax under sec. 6651(a)(1), but it is treated as a return filed by the taxpayer for purposes of determining the amount of the addition to tax under sec. 6651(a)(2).  Sec. 6651(g).

Petitioner was required to file his 2013 Form 1040 by April 15, 2014, because his gross income for 2013 exceeded his filing threshold and respondent had not granted him an extension of time to file. See secs. 6012(a)(1)(A)(i), 6072(a), 6081(a). Petitioner did not do so. Respondent has produced sufficient evidence that petitioner is liable for the section 6651(a)(1) addition to tax unless an exception applies. See Higbee v. Commissioner, 116 T.C. at 446; Ruggeri v. Commissioner, T.C. Memo. 2008-300.

B.     Section 6651(a)(2) Addition to Tax

Section 6651(a)(2) imposes an addition to tax for failure to pay the amount shown as tax on the taxpayer's return on or before the date prescribed (determined with regard to any extension of time for payment) unless the taxpayer can establish that the failure is due to reasonable cause and not due to willful neglect. The section 6651(a)(2) addition to tax is equal to 0.5% of the amount of tax shown on the return if the failure is not for more than one month, with an additional 0.5% to be added for each month or partial month during which the failure to pay continues, not to exceed 25% in the aggregate.[9]

_____

[9]The amount of the addition to tax under sec. 6651(a)(2) reduces the amount of the addition to tax under sec. 6651(a)(1) for any month to which an addition to tax applies under both paragraphs. Sec. 6651(c)(1).

Respondent submitted a copy of the SFR that he prepared for petitioner. Petitioner did not pay his 2013 Federal income tax as shown on the SFR by April 15, 2014. See Wheeler v. Commissioner, 127 T.C. 200, 208-209 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); Hawkins v. Commissioner, T.C. Memo. 2008-168. Respondent has produced sufficient evidence that petitioner is liable for the section 6651(a)(2) addition to tax unless an exception applies. See Higbee v. Commissioner, 116 T.C. at 446; Ruggeri v. Commissioner, T.C. Memo. 2008-300.

C.     Exceptions to the Section 6651(a)(1) and (2) Additions to Tax

Reasonable cause is a defense to the section 6651(a)(1) and (2) additions to tax. To prove reasonable cause for a failure to file timely, the taxpayer must show that he exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. To prove reasonable cause for a failure to pay the amount shown as tax on a return, the taxpayer must show that he exercised ordinary business care and prudence in providing for payment of his tax liability and nevertheless was either unable to pay the tax or would suffer undue hardship if he paid the tax on the due date. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. In determining whether the taxpayer

was unable to pay the tax in spite of the exercise of ordinary business care and prudence, consideration will be given to all of the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in view of the income (or other amounts) he/she could at the time of the expenditures reasonably expect to receive before the date prescribed for the payment of the tax. See id.

From 2005 through 2009 petitioner sustained business losses and determined he could not continue his full-time law practice. He testified about an inability to keep track of records while winding up the practice, in addition to some recordkeeping errors by his contract staff while gathering evidence for trial. According to petitioner, he was "not psychologically fit" to perform necessary business duties in 2013. While petitioner testified that it was "never * * * [his] intention * * * to not pay taxes", he "just, sort of, fell apart" and found himself incapable of doing so.

The Court recognizes that petitioner had some difficult work and personal circumstances during the year in issue. The Court concludes, however, that these circumstances do not give rise to a reasonable cause defense. Petitioner continued to work on his remaining legal cases during 2013, and there is no evidence that he was unable to provide satisfactory legal services. The Court has consistently held

that if a taxpayer is able to continue his/her business affairs despite an illness or incapacity, then the illness or incapacity does not establish reasonable cause. Ruggeri v. Commissioner, slip op. at 7-8 (and cases cited threat); Hazel v. Commissioner, T.C. Memo. 2008-134; Jordan v. Commissioner, T.C. Memo. 2005-266, slip op. at 7-9 (and cases cited threat). Similarly, the Court has also held that a taxpayer's selective incapacity or inability to meet his/her tax obligations when he/she can conduct normal business activities does not establish reasonable cause. Jordan v. Commissioner, slip op. at 9; Wright v. Commissioner, T.C. Memo. 1998-224, aff'd without published opinion, 173 F.3d 848 (2d Cir. 1999). Consequently, respondent's determinations regarding the section 6651(a)(1) and (2) additions to tax are sustained.

D.    Section 6654(a) Addition to Tax

Section 6654(a) imposes an addition to tax on an underpayment of estimated income tax unless an exception applies. The section 6654(a) addition to tax is determined by applying the underpayment rate established under section

6621 to the amount of the underpayment[10] for the period of the underpayment.[11] The addition to tax is also calculated with reference to four required installment payments. Sec. 6654(c)(1); Wheeler v. Commissioner, 127 T.C. at 210. Each required installment of estimated income tax is equal to 25% of the required annual payment. Sec. 6654(d)(1)(A). The required annual payment is generally equal to the lesser of: (1) 90% of the tax shown on the taxpayer's return for the year (or 90% of the taxpayer's tax for the year if no return is filed) or (2) 100% of the tax shown on the return for the immediately preceding year if the taxpayer filed a return for the immediately preceding taxable year. Sec. 6654(d)(1)(B); Wheeler v. Commissioner, 127 T.C. at 210-211.

In his notice of deficiency, respondent determined that petitioner is liable for an addition to tax under section 6654 for 2013 for failure to make timely estimated tax payments. Petitioner was required to file his 2013 Form 1040 by April 15, 2014, but he did not do so. In addition, petitioner agrees that he did not

[10]"[A]mount of the underpayment" means the excess of the required installment over the amount, if any, of the installment paid on or before the due date for the installment. Sec. 6654(b)(1).

[11]The period of the underpayment runs from the due date for the installment to the earlier of "the 15th day of the 4th month following the close of the taxable year, or * * * with respect to any portion of the underpayment, the date on which such portion is paid." Sec. 6654(b)(2).

make any estimated income tax payments for 2013.  Respondent also introduced evidence that petitioner did not file a return for the 2012 tax year.  Therefore, respondent has met his burden under section 7491(c) to show that petitioner had a required annual payment under section 6654(d)(1)(B) but did not make any estimated tax payments and that he is liable for the addition to tax unless an exception applies.  See Holloway v. Commissioner, T.C. Memo. 2012-137.

E.    Exceptions to the Section 6654(a) Addition to Tax

There are two mechanical exceptions to the applicability of the section 6654 addition to tax.  First, the addition is not applicable if the tax shown on the individual's return for the year in question (or, if no return is filed, the individual's tax for that year), reduced for these purposes by any allowable credit for wage withholding, is less than $1,000.  Sec. 6654(e)(1).  Second, the addition to tax is not applicable if the individual's tax for the preceding taxable year was zero.  Sec. 6654(e)(2).

The first exception does not apply in this case.  Although he did not file a 2013 tax return, petitioner has conceded that his tax for that year was greater than $1,000.  Neither does the second exception apply.  At trial petitioner argued that he could not have made any estimated payments because when they were due, he had not submitted his tax return for tax year 2012 and thus "didn't know the

amount of estimated pay for 2013." The record corroborates that petitioner did not file a return for the 2012 tax year. For this reason, petitioner has failed to show that he falls within the section 6654(e)(2) exception to the addition to tax for failure to pay estimated tax. See Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).

Generally, no reasonable cause exception exists for the section 6654(a) addition to tax. Sec. 1.6654-1(a)(1), Income Tax Regs.; see also Bray v. Commissioner, T.C. Memo. 2008-113. But no addition to tax is imposed under section 6654(a) with respect to any underpayment if the Secretary determines that the taxpayer became disabled[12] in either the taxable year for which estimated income tax payments were required or in the preceding taxable year and the underpayment was due to reasonable cause and not willful neglect. Sec. 6654(e)(3)(B). Additionally, no addition to tax is imposed under section 6654(a) with respect to any underpayment to the extent the Secretary determines that by

---

[12]The term "disabled" includes a significant psychiatric disorder and mental incapacitation during the period under consideration, Shaffer v. Commissioner, T.C. Memo. 1994-618, or confinement to various hospitals for "severe mental illness", Carnahan v. Commissioner, T.C. Memo. 1994-163, aff'd without published opinion, 70 F.3d 637 (D.C. Cir. 1995); see also Jones v. Commissioner, T.C. Memo. 2006-176; Meyer v. Commissioner, T.C. Memo. 2003-12 (taxpayer's severe health problems and mental condition incapacitated him; thus, a sec. 6654(e) exception was applicable).

reason of casualty, disaster, or other unusual circumstances the imposition of the addition to tax would be against equity or good conscience. Sec. 6654(e)(3)(A).

Despite his personal conclusion that he was unable to continue his law practice, petitioner has not established a disability within the meaning of section 6654(e)(3)(B). He also has not established a casualty, a disaster, or other unusual circumstances on account of which the imposition of the section 6654(a) addition to tax would be against equity or good conscience. Consequently, respondent's determination with regard to the section 6654(a) addition to tax is sustained.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.